IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

EFRAIN SANTOS,

                Petitioner,

    vs.

STEWARD ECKERT, Superintendent,
Wende Correctional Facility,

                Respondent.

No. 9:18-cv-01301-JKS

MEMORANDUM DECISION

Efrain Santos, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Santos is in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Wende Correctional Facility. Respondent has answered the Petition, and Santos has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On September 18, 2013, Santos, along with co-defendants Pedro Romero and Maximino Alvarez, was charged with second-degree murder, second-degree attempted murder, first-degree assault, and two counts of second-degree criminal possession of a weapon in connection with an incident two months prior where the defendants shot and killed Santos' neighbor, Andre Rosario-Claudio, and attempted to kill Edgardo Torres-Claudio following a confrontation in which they ambushed the victims on a residential street in the City of Syracuse. Santos proceeded to a jury trial in which he was tried jointly with Romero. Co-defendant Alvarez pled guilty to first-degree assault and testified for the People at his co-defendants' trial.

The prosecution also presented at trial, among other witnesses, the testimony of Gilberto Rodriguez, Santos' 17-year-old downstairs neighbor. Rodriguez testified that he got into a physical argument with Santos the day of the incident. Victim Rosario-Claudio interceded and continued fighting with Santos until Rodriguez pulled Rosario-Claudio off Santos. Rosario-Claudio then walked to the store. When Rosario-Claudio returned, Santos bumped him and told him to come out back if he "wanted more." Rosario-Claudio followed Santos to the backyard, where the shooting started. Rodriguez had been charged in an unrelated case and agreed to testify in that case in exchange for an agreed-upon disposition of those unrelated charges. The prosecutor in Santos' case agreed to tell the court in Rodriguez's pending case that Rodriguez had testified at Santos' trial, but Rodriguez was granted no other benefit for his testimony in Santos' case. Santos did not call any witnesses on his behalf.

At the conclusion of trial, the jury found Santos guilty as charged of second-degree murder, attempted second-degree murder, first-degree assault, and two counts of second-degree criminal possession of a weapon. The court imposed an aggregate term of 50 years to life imprisonment.[1]

Through counsel, Santos appealed his conviction. In relevant part, he argued that the prosecutor committed misconduct by mischaracterizing the evidence, appealing to the jury's sympathy, making inflammatory comments, denigrating the defense, and diminishing the State's burden of proof. Santos relatedly argued that counsel was ineffective for failing to object to the instances of prosecutorial misconduct. The Appellate Division unanimously modified the

---

[1] The jury found Romero guilty of the same offenses, and the trial court imposed the same sentence upon him.

judgment by reducing the first-degree assault conviction to assault in the second degree, agreeing with Santos that there was legally insufficient evidence of serious physical injury. *Santos*, 57 N.Y.S.3d 1620, 1620-21 (N.Y. App. Div. 2017). But the appellate court rejected all other arguments and affirmed the judgment in all other respects. *Id.* at 1622. Santos sought leave to appeal to the New York Court of Appeals, which was summarily denied on August 11, 2017. *People v. Santos*, 86 N.E.3d 575, 575 (N.Y. 2017). His conviction became final on November 9, 2017, the conclusion of the 90-day period during which Santos could have sought certiorari review in the United States Supreme Court. *See Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001).

Santos then timely filed the instant *pro se* Petition for a Writ of Habeas Corpus to this Court on November 3, 2018. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Santos argues that the prosecutor committed misconduct by mischaracterizing the evidence, appealing to the jury's sympathy, making inflammatory comments, denigrating the defense, and diminishing the State's burden of proof. He relatedly argues that trial counsel was ineffective for failing to object to the misconduct.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).  The term unreasonable is a common term in the legal world.  The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law.  *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000).  Where there is no reasoned decision of the state court

addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Santos argues that the prosecutor committed misconduct by mischaracterizing the evidence, appealing to the jury's sympathy, making inflammatory comments, denigrating the defense, and diminishing the State's burden of proof. On direct appeal, the Appellate Division concluded that Santos failed to preserve his prosecutorial misconduct claims. *Santos*, 57 N.Y.S.3d 262 at 1621-22.

Federal habeas review of prosecutorial misconduct claims is limited to the narrow issue of whether the alleged misconduct violated due process. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 171 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller*, 485 U.S. 756, 765 (1987) (quoting *United States v. Bagley*, 473 U.S. 667 (1985)). Under this standard, a petitioner must show there is a reasonable probability the error complained of affected the outcome of the trial—*i.e.*, that absent the alleged impropriety, the verdict probably would have been different.

As an initial matter, Respondent correctly argues that Santos' prosecutorial misconduct claims are procedurally barred from federal habeas review as well. "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim." *Harris*, 489 U.S. at 262. In finding the prosecutorial conduct claim unpreserved for appellate review, the Appellate Division relied upon New York's contemporaneous objection rule, New York Criminal Procedure Law ("CPL") § 470.05(2), which has long been considered an "adequate and independent ground" that bars federal habeas review. *See Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011). New York's rule requires that an alleged error be "brought to the attention of the trial court at a time and in a way that [gives it] the opportunity to remedy the problem and thereby avert reversible error." *People v. Luperon*, 647 N.E.2d 1243, 1246-47 (N.Y. 1995). As the record supports that defense counsel did not raise this particular contention

at trial , the Appellate Division properly applied New York's adequate and independent contemporaneous objection rule, and his prosecutorial misconduct claims must be denied on that basis.

Moreover, Santos is not entitled to relief on the merits of his claims either. Santos first challenges the prosecutor's comment during summation that Gilberto Rodriguez "really wasn't getting any benefit" for testifying at Santos' trial. A review of the record, however, reflects that the prosecutor's comments were intended to clarify that Rodriguez's testimony at Santos' trial was not part of his cooperation agreement in the unrelated case. Rodriguez explained to the jury that, as part of his cooperation agreement, he was required to testify in the unrelated case, but he was not promised any further reduction of sentence in the other case in return for his testimony in Santos' case. And even if the jury could have interpreted the comments in the manner Santos now suggests, he fails to demonstrate that the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 171.

Santos also complains about certain comments in the prosecutor's opening statement, which he argues "gratuitous[ly]" appealed to the jury's sympathies. But again, while the prosecutor used colorful and evocative language, an independent review of the prosecutor's summation shows that none of the prosecutor's statements rose to the level of egregious conduct required for habeas relief. The comments at issue, in which the prosecutor described the "horror" of the victims' mother "begging and pleading for her . . . sons' lives" as she watched Santos lead her sons like "sheep to the slaughter," are less egregious than the types of statements that the Supreme Court has found to be insufficient to establish a due process violation based on prosecutorial misconduct. *See Darden*, 477 U.S. at 180 n. 10-12 (prosecutor did not deprive

defendant of right to fair trial where prosecutor urged jury to impose death penalty by arguing that "as far as I am concerned, . . . [the defendant is] an animal," and "I wish [the decedent] had a shotgun in his hand . . . and blown [the defendant's] face off.  I wish that I could see him sitting here with no face, blown away by a shotgun").

Santos next avers that counsel denigrated the defense by characterizing the defense theory as "ridiculous" or a "conspiracy theory."  It is improper as a matter of both state and federal law for a prosecutor to impugn defense counsel's integrity, denigrate or ridicule the defense theory, or make *ad hominem* attacks on defense counsel.  *See, e.g.*, *United States v. Biasucci*, 786 F.2d 504, 513-14 & n.9 (2d Cir. 1986) (characterizing as "clearly . . . inappropriate" the prosecutor's "needless and unwarranted *ad hominem* attacks against defense counsel[,] . . . [f]or instance, the prosecutor addressed defense counsel at one point as 'you sleaze,' at another as 'you hypocritical son-,' as being 'so unlearned in the law,' and on several occasions the prosecutor objected to questions by the defense as 'nonsense'" (internal citations to the record omitted)); *People v. LaPorte*, 762 N.Y.S.2d 55, 57-58 (N.Y. App. Div. 2003) (reversing conviction where prosecutor's remarks during summation were not fair response to defense counsel's summation and thus denied defendant a fair trial because evidence against defendant was not overwhelming, prosecutor impugned defense counsel's integrity, ridiculed the defense theory as "mumbo jumbo," and "warned the jurors . . . several times that defense counsel was manipulating them and trying to prevent them from using their common sense") (citation omitted).  But as the Second Circuit has noted, "a prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation."  *United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995) (citation and internal brackets omitted).  A fair reading of the record reflects

that the prosecutor's comments reflect a fair response to defense counsel's summation, in which she argued that the victims' family and friends had testified against Santos in an effort to continue the victims' "grudges and disputes" against Santos, described the People's theory as "fiction" and a "production," and characterized the prosecution's witnesses as "actors" in "this great play." *See Knight v. Walsh*, 524 F. Supp. 2d 255, 287 (W.D.N.Y. 2007).

Finally, Santos argues that the prosecutor's use of a jigsaw puzzle analogy to explain the reasonable doubt standard effectively diminished the State's burden of proof. As Respondent acknowledges, the Sixth Circuit Court of Appeals recently expressed concern over such analogy in the direct appeal of a federal conviction:

> The use of this metaphor for the beyond-a-reasonable-doubt standard was also improper. One can easily imagine trying to put together a 1000-piece jigsaw puzzle based on the picture on the box that the puzzle came in. Whether half of the puzzle pieces are missing or only ten of them are missing, one could still piece together enough of the puzzle to be able to recognize that it resembled the picture on the box. Accordingly, jurors could understand the metaphor to describe a far less demanding standard of proof than true proof beyond a reasonable doubt.

*United States v. Bradley*, 917 F.3d 493, 508 (6th Cir. 2019).

The Sixth Circuit nonetheless concluded that "the use of this metaphor was not flagrant misconduct requiring reversal under the plain-error standard." *Id.* As discussed above, the "narrow" standard of review employed for due process claims in § 2254 cases is substantially more deferential to the lower court decision than the plain error standard employed on federal direct appeal. Moreover, there is simply no United States Supreme Court authority indicating that a prosecutor's use of the jigsaw puzzle analogy rises to the level of a federal constitutional violation. In the absence of any clearly established federal law on this issue, AEDPA relief is foreclosed. *See Carey*, 549 U.S. at 77. And because Santos fails to establish that the prosecutor

committed misconduct with respect to any of the challenged comments noted above, his related ineffective assistance claim also must fail. *See, e.g.*, *United States v. Molina*, 934 F.2d 1440, 1448 (9th Cir. 1991) (trial counsel may properly decide to "refrain from objecting during closing argument to all but the most egregious misstatements by opposing counsel on the theory that the jury may construe their objections to be a sign of desperation or hyper-technicality").

## V. CONCLUSION

Santos is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: December 18, 2019.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge